Filed 12/20/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULA BOYD,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DAVID FREEMAN,<br><br>Defendant and Respondent. | B279246<br>(Los Angeles County<br>Super. Ct. No. BC588216) |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Reversed and remanded with directions.

Ivie, McNeill & Wyatt and Chandler A. Parker for Plaintiff and Appellant.

The Jamison Law Firm and Guy E. Jamison for Defendant and Respondent.

In the underlying action, appellant Paula Boyd asserted claims against respondent David Freeman predicated on allegations of wrongful foreclosure. The trial court sustained Freeman's demurrer to Boyd's first amended complaint without leave to amend, reasoning that the doctrine of res judicata barred her claims, in view of a judgment in favor of Freeman and against Boyd in a prior action. We conclude that the doctrine did not foreclose Boyd's claims because the prior judgment was not on the merits. We therefore reverse and remand for further proceedings.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Boyd executed a promissory note in favor of attorney Freeman secured by a deed of trust for a property in Glendale. Later, Freeman initiated foreclosure proceedings that culminated in a July 16, 2012 foreclosure sale, at which Freeman became owner of the Glendale property.

In June 2012, while the foreclosure proceedings were pending, Boyd initiated her prior action against attorney Freeman (L.A. Super. Ct. Case No. BC486054). Her original complaint asserted claims for legal malpractice, breach of contract, breach of fiduciary duty, fraud, and declaratory relief, predicated on allegations that after Boyd hired Freeman to represent her in a matter, he made a "usurious" loan to her secured by the Glendale property. According to

the complaint, in 2007, after Freeman attempted to arrange for a foreclosure sale of the property, Boyd and Freeman entered into a settlement agreement. The complaint asserted that Boyd's claims were for "violations that . . . continued to occur after the settlement," alleging that Freeman "continued to use his legal status and his usurious loan terms to try to take the property illegally and wrongfully from [Boyd]." Although the complaint contained no claim for unlawful foreclosure in connection with the then-pending foreclosure, it alleged that Freeman had violated Civil Code section 2924f, which is a provision of the statutory scheme regulating nonjudicial foreclosure sales (Civ. Code, § 2924 et seq.).[1]

On July 16, 2012, shortly before the foreclosure sale, Boyd submitted an ex parte application for a temporary

---

[1] The operation of the statutory scheme can be summarized as follows: "When the trustor [that is, debtor] defaults on the debt secured by the deed of trust, the beneficiary [that is, creditor] may declare a default and make a demand on the trustee to commence foreclosure. [Citation.] . . . Generally speaking, the statutory, nonjudicial foreclosure procedure begins with the recording of a notice of default by the trustee. ([Civ. Code,] § 2924, subd. (a)(1).) After the expiration of not less than three months, the trustee must publish, post, and mail a notice of sale at least 20 days before the sale, and must also record the notice of sale . . . ([Civ. Code,] §§ 2924, subds. (a)(1), (a)(2) & (a)(3), 2924f, subd. (b)(1) . . . .) The sale and any postponement are governed by [Civil Code] section 2924g. [Citations]." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334-335, fn. omitted.)

3

restraining order to enjoin the foreclosure sale. The application asserted that the notice of default misstated the amount due on the note, in contravention of Civil Code section 2924, subdivision (b)(1). The trial court denied the application.

Freeman demurred to the complaint, contending that Boyd's claims were time-barred under the applicable statutes of limitations. In addition, Freeman argued that the claims failed because the complaint's allegations regarding the 2007 settlement, viewed along with the note and trust deed, demonstrated the nonusurious nature of the loan. The trial court sustained the demurrer, but afforded Boyd leave to amend her claims, with the exception of her request for declaratory relief.

In March 2013, Boyd filed her first amended complaint. The complaint asserted a claim for breach of fiduciary duty predicated on allegations that Freeman had breached his professional obligations as an attorney in making the secured loan to Boyd, a claim for breach of fiduciary duty predicated on allegations that the loan was usurious, and a claim for restitution under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) predicated on violations of the California Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.) and Freeman's other alleged misconduct.[2] The restitution claim sought recovery of the

---

[2]      Generally, "[b]y proscribing 'any unlawful' business practice, '[the UCL] "borrows" violations of other laws and treats (*Fn. is continued on the next page.*)

4

Glendale property, alleging, inter alia, that Freeman's misconduct resulted "in claims of foreclosure rights not in compliance with California law," as well as "a purportedly lawful but in fact void [t]rustee's sale . . . ."

Freeman demurred to the first amended complaint on the grounds that its claims were untimely under the applicable statutes of limitations, and were otherwise legally untenable. The trial court sustained the demurrer to the first amended complaint without leave to amend, concluding that it stated no viable claims. In October 2013, the court entered an order dismissing the prior action, from which Boyd noticed an appeal.

In an unpublished opinion (*Boyd v. Freeman* (May 19, 2015, B253500) 2015 Cal.App.Unpub. LEXIS 3449), we affirmed the order of dismissal, agreeing with the trial court that the claims in the first amended complaint were time-barred insofar as they relied on a breach of fiduciary duty, and that the UCL claim failed insofar as it relied on the CLRA, as that statute is inapplicable to loans for the purchase of real estate. In determining that leave to amend had been properly denied, we noted that Boyd had not shown that she could state a claim for wrongful foreclosure. We stated: "[A]lthough [Boyd] refers broadly to 'irregularities in the . . . sale'" and inadequacy of the sale price, she offers no

them as unlawful practices' that the [UCL] makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)

5

allegations detailing the purported misconduct, and no legal authority showing that any such misconduct supports the proposed claims . . . ."

On July 16, 2015, Boyd commenced the underlying action. Her first amended complaint (FAC) contains claims for wrongful foreclosure, vacation of the trustee's sale and the trustee's deed upon sale, unjust enrichment, and quiet title, based on allegations that Freeman "caused an illegal, fraudulent or willfully oppressive sale" of the Glendale property. The FAC alleges that the secured note was void -- and thus provided no basis for the sale -- because it fraudulently stated it had been arranged by a mortgage broker; that Freeman's notice of default overstated the amount in default; that he contravened Civil Code section 2924f by failing to post timely written notices of the foreclosure sale, and "in other particulars"; and that he bought the property at the sale for less that its true value.

Freeman demurred to the FAC, contending that under the doctrine of res judicata, the order of dismissal in Boyd's prior action barred the claims in the FAC. After sustaining the demurrer without leave to amend, the trial court entered a judgment in favor of Freeman and against Boyd. This appeal followed.

## DISCUSSION

Boyd contends the trial court erred in sustaining the demurrer to the FAC without leave to amend. For the reasons discussed below, we agree.

A. *Standard of Review*

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation .] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879, fn. omitted (*Cantu*).) "Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Id.* at p. 879, fn. 9.)

Under the first standard of review, "we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation], and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. [Citation.]" (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947.)

Under the second standard of review, the burden falls upon the plaintiff to show what facts he or she could plead to

cure the existing defects in the complaint. (*Cantu, supra,* 4 Cal.App.4th at p. 890.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Ibid.*)

B. *Governing Principles*

The key issues concern whether the order of dismissal in the prior action barred the claims in the FAC under the doctrine of res judicata or a related doctrine. The term "res judicata" is often used as an umbrella term encompassing the principles of claim preclusion and issue preclusion, viewed as two separate aspects of a single doctrine. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) "Claim preclusion, the ""primary aspect"" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ""secondary aspect"" historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." [Citation].) (*Id.* at p. 824, quoting *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).)

Unlike issue preclusion, claim preclusion is directed at "entire causes of action." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) Generally, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*Ibid.*) In contrast, "issue preclusion applies: (1)

8

after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)

Our focus is on the bar rule of claim preclusion, which limits litigation by plaintiffs. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 973.) Under this rule, "a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen Corp.*), fn. omitted.) The rule "promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from ""splitting a single cause of action or relitigat[ing] the same cause of action on a different legal theory or for different relief."" [Citation.]" (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 727 (*Ivanoff*), quoting *Mycogen Corp.*, *supra*, 28 Cal.4th at p. 897.)

For purposes of the bar rule, California law identifies a single cause of action as "the violation of a single primary right." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. [Citation.]" (*Federation of Hillside & Canyon Assns. v. City of Los*

9

*Angeles* (2004) 126 Cal.App.4th 1180, 1202.) Thus, under the bar rule, a complaint may contain several counts, each of which relies on a different legal theory, yet collectively assert only a single violation of a specific primary right, that is, a single cause of action. (*Boeken, supra,* 48 Cal.4th at p. 798.) Whether the facts alleged in a complaint constitute the violation of a single primary right, or more than one such right, requires an examination of the harm asserted, in conjunction with relevant judicial precedent. (*Ivanoff, supra,* 9 Cal.App.5th at p. 728; *Sawyer v. First City Financial Corp.* (1981) 124 Cal.App.3d 390, 399-403 (*Sawyer*).)

The bar rule is properly raised as a defense on demurrer when all relevant facts "are within the complaint or subject to judicial notice."[3] (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 485; see *Barker v. Hull* (1987) 191 Cal.App.3d 221, 226-227.) Furthermore, that defense may be invoked even when the prior judgment resulted from

---

[3] "In ruling on a demurrer based on res judicata, a court may take judicial notice of the official acts or records of any court in this state. [Citations]." (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299.) Here, at Freeman's request, the trial court took judicial notice of portions of the record in the first action, namely, the complaints, Boyd's ex parte application for a temporary restraining order, the order of dismissal, and our decision affirming that order. Additionally, the court took judicial notice of certain pleadings filed in other actions. As Boyd does not challenge the taking of judicial notice, we rely on the documents described above in evaluating the ruling on the demurrer.

the sustaining of a demurrer, provided that the judgment was "on the merits." (*Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 330, 331, 334.) Whether the prior judgment was on the merits depends upon the facts of the case and the reason for the ruling. (*Ibid.*) A judgment based upon the sustaining of a demurrer for technical or formal defects is not on the merits and thus is not a bar to the filing of the new action. (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52.) "On the other hand, it is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former." (*Kanarek v. Bugliosi, supra,* 108 Cal.App.3d at p. 334.)

Under the bar rule, a prior judgment based on the statute of limitations ordinarily is not on the merits. In *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, 773 (*Mid-Century Ins. Co.*), the plaintiff sued his insurer for breach of contract, negligence, bad faith, and fraud, alleging that the insurer mishandled his insurance claim relating to damage resulting from the 1994 Northridge earthquake. After the trial court sustained a demurrer to the complaint without leave to amend because the applicable limitations period had run, the Legislature enacted a statute extending the limitations period for some lawsuits arising from the Northridge earthquake. (*Id.* at pp. 773-774.)

11

Relying on that statute, the plaintiff initiated a second action against the insurer in which he asserted the same claims. (*Ibid*.) The insurer requested judgment on the pleadings, arguing that the doctrine of res judicata barred the second action. (*Ibid*.) When the trial court denied that request, the insurer sought relief by writ. (*Ibid*.) Affirming the denial of judgment on the pleadings, the appellate court concluded that the judgment in the first action on the basis of the statute of limitations was not "on the merits." (*Id*. at pp. 774, 776-777.)

In *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1593, 1594-1596 (*Koch*), the plaintiff initiated a lawsuit, alleging that the defendants had created and sold subdivision land in violation of the California Subdivision Map Act (Gov. Code, §§ 66410-66499.37). When the defendants sought summary judgment on the claims on the basis of the applicable statute of limitations, the plaintiff requested leave to amend the complaint to include a fraud claim, which he contended was not time-barred. (*Koch v. Rodlin Enterprises* at p. 1594.) The trial court granted summary judgment and denied leave to amend. (*Ibid*.) The plaintiff then filed a second action for fraud against the defendants, who successfully demurred on the ground of res judicata, and secured a judgment in their favor. (*Id*. at p. 1595.) Reversing, the appellate court held that "[t]ermination of an action by a statute of limitations is . . . a technical or procedural, rather than a substantive, termination." (*Id*. at p. 1596.)

12

Under the bar rule, a judgment due to a demurrer to potentially curable defects in the complaint's allegations also is not on the merits. In *Keidatz v. Albany* (1952) 39 Cal.2d 826, 827 (*Keidatz*), the plaintiffs, after buying a newly-constructed home, brought an action to rescind the contract on the basis of fraud. A demurrer was sustained to the complaint, as the plaintiffs had engaged in undue delay in seeking rescission, and the complaint lacked allegations sufficient to state a fraud claim for damages. (*Id.* at p. 829.) Although the plaintiffs were granted leave to amend, they failed to file an amended complaint, and judgment was entered against them. (*Ibid.*) They then commenced a second action, seeking damages rather than rescission. (*Id.* at pp. 827-828.) Their complaint asserted a fraud claim for damages, and contained new allegations necessary for such a claim but absent from their prior complaint. (*Id.* at p. 828.) Relying on the bar rule, the defendant successfully secured summary judgment. (*Id.* at p. 829.) Our Supreme Court reversed, concluding that the newly alleged facts barred the application of claim preclusion. (*Id.* at pp. 828-829.)

C. *Analysis*

Upon sustaining Freeman's demurrer to the FAC, the trial court concluded that Boyd's actions involved the same primary right, as both actions challenged Freeman's conduct in connection with the foreclosure sale, and sought recovery of the Glendale property. In so ruling, the court observed that Boyd's complaints in the first action contained

13

allegations asserting Freeman's noncompliance with the nonjudicial foreclosure scheme, which constituted a key basis for her claims in her second action.

Although we agree that both actions involved one primary right in common -- namely, the right associated with the nonjudicial foreclosure scheme-- the judgment in the first action was not on the merits with respect to that primary right, and thus did not bar Boyd's second action.[4] In sustaining the demurrer underlying the judgment in the first action, the trial court ruled primarily that Boyd's claims were time-barred, which is not a determination "on the merits." (*Mid-Century Ins. Co.*, *supra*, 138 Cal.App.4th at p. 774; *Koch*, *supra*, 223 Cal.App.3d at pp. 1596-1598.)[5]

---

[4]     In the first action, Boyd's first amended complaint focused on Freeman's alleged misconduct in connection with the 2005 loan, but also referred to potential violations of the nonjudicial foreclosure scheme.  Under the UCL claim, after alleging that Freeman's misconduct regarding the 2005 loan contravened the CLRA, the complaint asserted that his misconduct "resulted in claims of foreclosure rights not in compliance with California law, [and] further resulted in a purportedly lawful but in fact void [t]rustee's sale . . . ."  The UCL claim thus depended in part on the primary right relating to the nonjudicial foreclosure scheme. (See *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 625-626.)

[5]     On appeal, Freeman has not suggested that the judgment in the first action was on the merits, although the ruling on the demurrer also involved a substantive determination, namely, that the UCL claim failed insofar as it relied on the CLRA because the CLRA was inapplicable to Freeman's loan to Boyd. (*Fn. is continued on the next page.*)

Freeman invokes a principle he terms "the rule against splitting a cause of action," which he maintains is distinct from the doctrine of res judicata, and requires no prior judgment on the merits for its application. He argues that

<hr />

As explained below, we would have rejected any such contention had it been raised.

The primary right underlying the CLRA-based UCL claim in the first action differed from the key primary right underlying the FAC's claims relating to the nonjudicial foreclosure sale. The CLRA and the nonjudicial foreclosure scheme regulate different types of harmful conduct. The purpose of the CLRA is to protect the consumer from unfair or deceptive practices during the purchase or lease of goods or services. (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11; Civ. Code, §§ 1760, 1770.) In contrast, the nonjudicial foreclosure scheme is intended to provide creditors a quick and efficient remedy against defaulting debtors while protecting debtors from a wrongful loss of property. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) Those different purposes are reflected in Boyd's claims, as the CLRA-based UCL claim in the first action focused on Freeman's alleged misconduct in making the 2005 loan, while the FAC's claims focus on the validity of the 2012 foreclosure sale. Thus, the primary right underlying the CLRA-based UCL claim was distinct from the key primary right underlying the FAC's claims. (*Ivanoff*, *supra*, 9 Cal.App.5th at pp. 723-729 [claim that a lender breached a secured loan agreement involved a primary right distinct from that underlying claim that the lender, in making the loan, violated duties under the federal Truth In Lending Act (15 U.S.C. § 1601 et seq.)]; *Sawyer*, *supra*, 124 Cal.App.3d at pp. 396-397, 402 [claim that the defendants breached a loan agreement by failing to make payments involved a primary right distinct from claim that the defendants conspired to arrange a sham foreclosure sale].)

15

the demurrer was properly sustained because the FAC involved "a single primary right, asserted in two successive proceedings, in violation of the theory of primary right, and thus in violation of the rule against the splitting of a cause of action," even though the judgment in the first action was not on the merits.  The crux of his contention is that Boyd's second action is an impermissible "effort to circumvent . . . the rulings . . . in the [f]irst [l]awsuit denying her leave to amend."  We disagree.

Under California law, the rule against splitting a cause of action is not independent of the doctrine of res judicata. (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1146.) As our Supreme Court has explained, the rule against splitting a cause of action reflects the application of the primary right theory, and "is in part a rule of abatement and in part a rule of res judicata."  (*Ibid.,* italics omitted.) "'[W]hen a plaintiff attempts to divide a primary right and enforce it in two suits,'" the primary right theory prevents this result in two ways:  "'(1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement . . . ; [and] (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata [citation].'"[6]  (*Ibid*., italics omitted, quoting *Panos v. Great*

---

[6]  As Witkin explains, when a plea of abatement based on a pending prior action is established in a second action, the
(*Fn. is continued on the next page.*)

*Western Packing Co.* (1943) 21 Cal.2d 636, 638-640).  So understood, the rule against splitting a cause of action incorporates the bar rule of claim preclusion.  For that reason, the former reflects policy considerations similar to those underlying the latter, namely, the reduction of vexatious litigation and the conservation of judicial resources.  (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1250-1251.)

Boyd's second action did not contravene the rule against splitting a cause of action, as the judgment in her first action was not "on the merits" with respect to the key primary right underlying her claims in the second action.  In the absence of a judgment on the merits, the bar rule of claim preclusion did not disallow Boyd's new claims for unlawful foreclosure predicated on additional factual allegations.  (*Keidatz, supra*, 39 Cal.2d at pp. 828-829.)  Nor did the denial of leave to amend in the first action do so.  As our Supreme Court has explained, "[i]f . . .  new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint."  (*Id.* at p. 828; see *Sterling v. Galen* (1966) 242 Cal.App.2d 178, 184, fn. 2 ["The fact that defendants' general demurrers were sustained

appropriate remedy is the entry of an interlocutory judgment postponing trial, rather than dismissal of the action.  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 971, pp. 383-385.)

without leave to amend in the first action is not, of course, determinative of the question of res judicata"].)

Freeman's reliance on *Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel* (1992) 6 Cal.App.4th 157 (*Ricard*) is misplaced, as that decision is founded on principles not applicable here, notwithstanding its reference to the policy considerations underlying the rule against splitting of a cause of action. There, the plaintiffs sued a law firm, seeking punitive damages. (*Ricard, supra*, 6 Cal.App.4th at p. 159.) After sustaining demurrers to portions of the complaint and first amended complaint, the trial court struck the request for punitive damages without leave to amend. (*Ibid.*) The plaintiffs then sought to file a second amended complaint requesting punitive damages on the basis of a new claim for conspiracy to commit fraud, but the trial court denied leave to file it. (*Ibid.*) While the initial action was pending and without the filing of a notice of a related case as required under local rules, the plaintiffs commenced a second action in a different district of the same superior court. (*Ibid.*) The new action was limited to the identical claim for conspiracy to commit fraud and request for punitive damages they had unsuccessfully sought to add to their complaint in the first action. (*Ibid.*) In the second action, the law firm demurred on the ground that the complaint was "another patent attempt to circumvent the . . . ruling" in the first action. (*Ibid.*) After the second action was transferred to the superior court district in which the first action was pending, the trial court there sustained the

18

demurrer without leave to amend and entered a judgment of dismissal. (*Id*. at pp. 159-160.)

The plaintiffs appealed from the judgment in the second action, contending that the sustaining of the demurrer on the basis of collateral estoppel -- that is, issue preclusion -- was improper, as there was no final judgment on the merits in the first action. (*Ricard*, *supra*, 6 Cal.App.4th at pp. 159-160.) The appellate court concluded that collateral estoppel was not the actual basis for the ruling, as the trial court had expressly characterized the ruling in the first action as "'just an interlocutory order.'" (*Id*. at pp. 161, 162.) The appellate court further concluded that the dismissal of the second action was proper in view of the trial court's statutory authority to strike "any pleading not drawn or filed in conformity with . . . an order of the court" (Code Civ. Proc., § 436, subd. (b)) and its "inherent discretionary power" to dismiss sham claims (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915).[7] (*Ricard*, *supra*, at p. 162.) The appellate court stated: "With almost frightening candor appellants acknowledge that the present suit was filed solely to circumvent the court's prior adverse ruling. Consequently, it could properly be struck . . . ."

---

[7]     Code of Civil Procedure section 436 provides: "The court may . . . at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."

19

(*Ibid.*)  In so concluding, the appellate court discussed the theory of primary rights and remarked that the second action "split [the plaintiffs'] cause of action in violation of the policy against misuse of court time."  (*Ibid.*)  The appellate court further observed that the plaintiffs' appropriate course of action was to seek review of the adverse ruling in the first action by appeal or writ proceeding.  (*Ibid.*)

Nothing in *Ricard* suggests the existence of a doctrine properly denominated a "rule against splitting a cause of action" permitting a court to sustain a demurrer in the absence of a prior judgment on the merits.  The holding in *Ricard* relied on the trial court's statutory and inherent authority to strike complaints that circumvent a prior court order.  Although the appellate court alluded to the rule against splitting a cause of action, its remark, viewed in context, conveyed only that a policy consideration underlying that rule -- rather than the rule itself -- supported the sustaining of the demurrer in the second action.

Furthermore, the rationale in *Ricard* is inapplicable here because Boyd's second action improperly circumvented no court order.  As explained above, although there was a final judgment in the first action, it was not on the merits.  In the absence of such a judgment, the bar rule of claim preclusion did not prevent Boyd from asserting the claims in the FAC, even though she had been denied leave to amend in the first action.  (*Keidatz, supra*, 39 Cal.2d at pp. 828-829.)  Furthermore, unlike the plaintiffs in *Ricard*, Boyd contravened no court rules in initiating the underlying

20

action; on the contrary, she engaged in conduct ordinarily regarded as unexceptional.

*Friedman v. Stadum* (1985) 171 Cal.App.3d 775, upon which Freeman also relies, is inapposite, as it contains no discussion of res judicata or the rule against splitting a cause of action. There, an attorney and his client brought an action for defamation against an expert witness they had previously hired. (*Id*. at p. 777.) After the expert witness secured a judgment in his favor in the defamation action -- but before that judgment became final -- the expert witness commenced a malicious prosecution action against the attorney and his client. (*Id*. at pp. 777-778.) The attorney then successfully demurred to the malicious prosecution claim on the ground that it was premature, due to a pending appeal in the defamation action. (*Id*. at p. 778.) Affirming, the appellate court concluded that the expert witness could not demonstrate an element required for a malicious prosecution claim, namely, "that the underlying proceeding [had] terminated in his favor." (*Id*. at pp. 778, 779.) That conclusion implicates neither res judicata nor the rule against splitting a cause of action. In sum, the demurrer to the FAC was improperly sustained.[8]

---

[8] *Sabek, Inc. v. Englehard Corp.* (1998) 65 Cal.App.4th 992 (*Sabek*) which Freeman first brought to our attention during oral argument, is inapplicable, as it involved issue preclusion, which requires only that the prior judgment adjudicate the target issue to finality, not that the prior judgment itself be on the merits. (*South Sutter, LLC v. LJ Sutter Partner, L.P.* (2011) 193
(*Fn. is continued on the next page.*)

Cal.App.4th 634, 660-661.)  In *Sabek*, the plaintiff twice attempted to serve process on the defendant corporation.  (*Sabek*, *supra*, 65 Cal.App.4th at p. 995.)  In each instance, the trial court granted the corporation's motion to quash service of summons for want of personal jurisdiction over the corporation.  When the plaintiff attempted for a third time to serve process on the corporation, the trial court summarily granted the defendant's motion to quash, concluding that the absence of personal jurisdication had been established.  (*Id*. at p. 996.)  Affirming, the appellate court held that under the doctrine of issue preclusion, the rulings on the first two motions -- though not judgments on the merits of the plaintiff's underlying claims -- determined to finality the absence of personal jurisdiction and thus established a fundamental defect barring the plaintiff's action.  (*Id*. at pp. 998-1000.)

Here, in contrast, the judgment in Boyd's first action established no such defect foreclosing the FAC's wrongful foreclosure claims.  That judgment relied on determinations that her breach of fiduciary duty and UCL claims were time-barred, and our decision affirming the judgment noted only that she had failed to show how she could amend her complaint to assert wrongful foreclosure claims.  As Freeman has not attempted to show that the FAC's claims facially suffer from the defects established in the first action, issue preclusion does not bar the claims.

*Katz v. Gerardi* (2011) 655 F.3d 1212, also relied on by Freeman at oral argument, reflects a procedural doctrine developed and enforced by federal courts.  (*Id*. at pp. 1217-1218.)  Although known as the "claim-splitting doctrine," it arises from the power of federal district courts to manage their own dockets, and is distinct from res judicata.  (*Id*. at p. 1218.)  Because application of the doctrine does not require a prior judgment on the merits, it permits a federal district court to dismiss a second action by a plaintiff who asserts claims that could have been
(*Fn. is continued on the next page.*)

22

## DISPOSITION

The order of dismissal is reversed, and the matter is remanded for further proceedings in accordance with this opinion.  Boyd is awarded her costs on appeal.

## CERTIFIED FOR PUBLICATION


MANELLA, J.


We concur:


EPSTEIN, P. J.                              WILLHITE, J.

---

pleaded in the plaintiff's first action, even though that action did not result in a judgment on the merits.  (*Id*. at pp. 1217-1219.)

We decline to apply the federal doctrine, as our research has disclosed no California state decision recognizing it, and Freeman has identified no such decision.  Generally, California courts do not apply federal claim-splitting rules that depart from principles established by our Supreme Court.  (*Fujifilm Corporation v. Yang* (2014) 223 Cal.App.4th 326, 333.)  While we recognize the merits of the federal doctrine, the principles set forth by our Supreme Court in *Keidatz* over half a century ago are binding on us.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)