**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ORLONZO HEDRINGTON,

                *Plaintiff-Appellant*,

 and

PETER L. FEAR, in his capacity as
the Trustee of the Chapter 7
Bankruptcy Estate of Orlonzo
Hedrington,

                *Plaintiff*,

 v.

UNITED STATES OF AMERICA,

                *Defendant-Appellee*.

No.23-15191

D.C. No.
2:18-cv-02333-
KJM-DB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted May 27, 2025
San Francisco, California

Filed May 22, 2026

Before:  Michelle T. Friedland, Mark J. Bennett, and
         Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Bennett

---

### SUMMARY[*]

---

### Federal Tort Claims Act

Reversing the district court's summary judgment in favor of the United States in Orlonzo Hedrington's suit under the Federal Tort Claims Act alleging negligence ("*Hedrington I*"), the panel held that *Hedrington I* was not barred by the doctrine of claim preclusion.

After timely filing suit in *Hedrington I*, Hedrington filed a second suit under the Federal Tort Claims Act raising similar factual allegations and negligence claims ("*Hedrington II*").  The district court dismissed *Hedrington II* as untimely.  Based on the doctrine of claim preclusion, the district court concluded that Hedrington's timely claim in *Hedrington I* was precluded by the final judgment in *Hedrington II*.

The panel held that it was bound by *Filice v. United States*, 271 F.2d 782 (9th Cir. 1959), which held that the law of the State where the act or omission occurred controls the claim preclusive effect of a Federal Tort Claims Act judgment.  Because Hedrington alleged that the tortious acts

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

occurred in California, the panel applied California's doctrine of claim preclusion. The *Hedrington II* judgment did not trigger California's doctrine of claim preclusion because, under California law, a prior judgment of dismissal based on the statute of limitations lacks claim preclusive effect. In any event, the district court's decision to apply claim preclusion based on the *Hedrington II* judgment—despite its knowledge of and jurisdiction over *Hedrington I*—resulted in manifest injustice sufficient to trigger the public policy exception under California law.

Accordingly, the panel reversed the district court's grant of summary judgment to the United States in *Hedrington I* and remanded for further proceedings.

The panel addressed additional issues in a concurrently filed memorandum disposition.

---

## COUNSEL

Orlonzo Hedrington, Pro Se, Fresno, California, for Plaintiffs-Appellants.

Joseph B. Frueh (argued), Assistant United States Attorney; Michele Beckwith, Acting United States Attorney; Phillip A. Talbert, United States Attorney; Office of the United States Attorney, United States Department of Justice, Sacramento, California; for Defendant-Appellee.

## OPINION

BENNETT, Circuit Judge:

Orlonzo Hedrington timely filed suit. He then sued again—but the second time, too late. In the second suit, the district court granted summary judgment against him on untimeliness grounds. Then, based on the doctrine of claim preclusion,[1] the district court concluded that his timely claim in the first suit was precluded by the final judgment in the second suit.

Both times, Hedrington sued under the Federal Tort Claims Act (FTCA), which "allows plaintiffs to seek damages from the United States for certain torts committed by federal employees." *Simmons v. Himmelreich*, 578 U.S. 621, 623 (2016). Of note here, the FTCA also "requires application of the whole law of the State where the act or omission occurred." *Richards v. United States*, 369 U.S. 1, 11 (1962). While federal district courts have "exclusive jurisdiction" over FTCA actions, 28 U.S.C. § 1346(b)(1), the Act generally directs federal courts to apply state law, *see Richards*, 369 U.S. at 11.

The fate of Hedrington's first suit turns largely on whether the FTCA's directive to apply state law includes state claim preclusion law. We have answered that question before, in the affirmative. In *Filice v. United States*, we

---

[1] The doctrine of claim preclusion has sometimes been known as "res judicata." But that usage has fallen out of favor. *See* 18 Wright & Miller's Federal Practice & Procedure § 4402 (3d. ed. 2025). In modern usage, the term "res judicata" refers collectively to the separate but related doctrines of claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

applied the law of the State where the act or omission occurred in determining the claim preclusive effect of a prior FTCA judgment. 271 F.2d 782, 783–84 (9th Cir. 1959) (per curiam). We have found no intervening higher authority "clearly irreconcilable" with this circuit precedent, so we as a three-judge panel remain bound by *Filice*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

Because Hedrington alleges that the tortious acts occurred in California, we must apply California's doctrine of claim preclusion. *See Filice*, 271 F.2d at 783–84. Under California law, the judgment dismissing Hedrington's second suit based on untimeliness did not have claim preclusive effect. *Koch v. Rodlin Enters.*, 273 Cal. Rptr. 438, 441 (Ct. App. 1990). Furthermore, California's public policy exception to claim preclusion applies on these facts. *See Panos v. Great W. Packing Co.*, 134 P.2d 242, 243 (Cal. 1943) (in bank). We therefore hold that the judgment dismissing Hedrington's second suit did not bar his timely filed first suit. Thus, we reverse and remand.[2]

# I

Hedrington underwent heart surgery and post-surgery rehabilitation at David Grant Medical Center ("DGMC"), a medical center operated by the Veterans Administration and located at Travis Air Force Base in Fairfield, California. According to Hedrington, on January 22, 2016, the day of his discharge, he was transported to a secluded area of the hospital, left unattended for twenty minutes, and, after

---

[2] In a concurrently filed memorandum disposition, we address the merits of Hedrington's negligence claim—an independent ground on which the district court granted summary judgment for the United States. In that disposition, we also hold that the United States was not entitled to summary judgment.

complaining of chest pain, injected in the arm with a drug that rendered him unconscious. When he awoke, he noticed that his clothes were twisted, he felt pressure in his rectal area, and he discovered semen in his buttocks.

Hedrington filed an FTCA administrative tort claim with the Department of Veterans Affairs, alleging "[s]exual assault and battery by nursing staff while hospitalized," as well as "deception and administering of drugs to disguise the assault and tortious behavior." The claim was received on August 28, 2017, and denied on February 27, 2018.

## A

On August 24, 2018, Hedrington, represented by counsel, timely filed an FTCA action for negligence in the U.S. District Court for the Eastern District of California ("*Hedrington I*"). The United States moved for summary judgment, arguing that judicial estoppel barred Hedrington from litigating the case because, while filing for Chapter 7 bankruptcy in April 2017, he had represented to the bankruptcy court and his creditors that he had no potential lawsuits or claims. The United States also contended that Hedrington lacked prudential standing because claims not disclosed during bankruptcy proceedings remained the property of the bankruptcy estate.

Hedrington agreed with the trustee of his bankruptcy estate, Peter Fear, to split any recovery from the case and to substitute Fear as plaintiff in the action, represented by the same counsel. Hedrington's counsel notified the district court of the agreement, and the district court substituted Fear as plaintiff. The district court then denied as moot the United States's motion for summary judgment.

**B**

On January 13, 2020, unbeknownst to his counsel in *Hedrington I*, Hedrington sued pro se in California Superior Court ("*Hedrington II*"). The operative complaint in *Hedrington II* made factual allegations similar to those made in *Hedrington I* and brought similar negligence claims. But the *Hedrington II* complaint named multiple other defendants, including DGMC, DGMC employees, the Fairfield Police Department, and the County of Solano.

The United States removed *Hedrington II*, and the case was assigned to the same district judge hearing *Hedrington I*. The United States substituted itself for the federal-employee defendants and notified the district court of *Hedrington I*. On the same day, the United States filed a similar notice in *Hedrington I* to notify the district court of *Hedrington II*.

The United States and DGMC moved for summary judgment in *Hedrington II*, arguing first that any claim against DGMC was barred by sovereign immunity, and second that any claim against the United States was time-barred because the action had not been filed within six months of the February 27, 2018 denial of Hedrington's administrative tort claim, as required by the FTCA. Finding under Local Rule 123(a) that "both actions involve[d] similar questions of fact and the same question of law," the district court related *Hedrington I* and *Hedrington II*. The assigned magistrate judge recommended granting the motion for summary judgment in *Hedrington II*. The magistrate judge's report concluded that "plaintiff's claim for the negligent or wrongful conduct of a government employee must be brought against the United States, and not DGMC," "plaintiff's claim against the United States is time-barred," and "plaintiff has failed to present any facts or

argument that would satisfy the requirements for equitable tolling." The magistrate judge's report acknowledged in a footnote that "this action was related to an earlier filed action, [*Hedrington I*]."

The district court adopted the magistrate judge's report and recommendations and granted summary judgment to the United States and DGMC. The district court then entered judgment for the United States and dismissed the claims against DGMC without prejudice for lack of jurisdiction. Then, declining to exercise supplemental jurisdiction over the remaining state law claims against the state defendants, the district court remanded the case to state court.

## C

About nine months after the district court's summary judgment in *Hedrington II*, the United States moved to dismiss *Hedrington I* for lack of subject matter jurisdiction or, in the alternative, for summary judgment on two independent grounds: claim preclusion based on the final judgment in *Hedrington II*, and insufficient evidence to support the negligence claim. The district court denied the United States's motion to dismiss but granted its motion for summary judgment on both grounds—claim preclusion and insufficient evidence.

The bankruptcy trustee then abandoned *Hedrington I*. Hedrington, however, timely appealed the judgment against him in *Hedrington I*. Though he was represented by counsel in the district court, Hedrington has proceeded pro se on appeal.

## II

We have jurisdiction under 28 U.S.C. § 1291. We "review de novo whether preclusion applies" and "review de

novo a district court's grant of summary judgment." *Bahra v. County of San Bernardino*, 945 F.3d 1231, 1234 (9th Cir. 2019). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law." *United States v. Washington*, 928 F.3d 783, 790 (9th Cir. 2019).

## III

In determining the effect of the *Hedrington II* judgment, we face a threshold question: Which body of law—state or federal—governs the judgment's claim preclusive effect? The United States argues that the district court correctly applied federal law, under which a dismissal for untimeliness carries claim preclusive effect. Hedrington disagrees, and argues that under the applicable state law, the *Hedrington II* judgment did not have claim preclusive effect.

In *Filice v. United States*, we held that the law of the State where the act or omission occurred controls the claim preclusive effect of a FTCA judgment. 271 F.2d at 783–84. Under *Miller v. Gammie*, we are bound by *Filice* unless the Supreme Court "ha[s] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." 335 F.3d at 900. Because *Filice* is not clearly irreconcilable with later Supreme Court decisions, we conclude that California preclusion law governs the claim preclusive effect of the *Hedrington II* judgment.

## A

The FTCA contains "a formal expression of the will of Congress" on "the issue of the applicable law." *Richards*, 369 U.S. at 7. The statute directly incorporates "the law of

the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court has interpreted this to "require[] application of the whole law of the State where the act or omission occurred," including that State's conflict-of-laws rule. *Richards*, 369 U.S. at 11. In determining whether the "whole law of the State" includes principles of res judicata, however, circuit courts have split, as part of a larger debate over whether the law of preclusion is substantive or procedural. *See* Jean F. Rydstrom, *Federal or State Law as Governing in Matters of Res Judicata and Collateral Estoppel in Federal Tort Claims Act Suit* § 4, 49 A.L.R. Fed. 326 (1980) (collecting cases); *see also* Restatement (Second) of Judgments § 87 cmt. b (A.L.I. 1982).

We most recently addressed this issue in *Filice*. 271 F.2d at 783. There, Frank Filice had sued the United States under the FTCA and won a $15,000 judgment. *Id.* at 782–83. But he later sought unsuccessfully to vacate the judgment, because he believed that $15,000 "was grossly inadequate in view of the permanent nature of his injuries." *Id.* at 783. After those efforts failed, he sued again, "based upon the same original cause of action, . . . claiming that the $15,000 judgment covered damages only to the date of the original trial." *Id.* at 783–84. Filice believed "that he should further recover for permanent injuries, additional damages from the date of the original trial." *Id.* at 784. The district court dismissed the later-filed complaint, and Filice appealed. *Id.*

We affirmed. *Id.* We reasoned that "[u]nder the law of California, which is applicable here, the [United States], if a private employer, would have had a defense of [claim preclusion]." *Id.* at 783. And because Filice's claims for "damages resulting from the negligent acts" had "merged" into his final judgment under California law, all he could "do

is to sue on the judgment." *Id.* (first citing Restatement (First) of Judgments § 47 and cmts. (1942); and then citing *id.* § 62 cmt. d). So we held that California's doctrine of claim preclusion required the district court "to dismiss the [later filed] complaint with prejudice." *Id.* at 784. In sum, we applied the claim preclusion law of California, the State where the act or omission occurred, to determine the preclusive effect of Filice's prior FTCA judgment. *See id.* at 783–84.

## B

As a three-judge panel, we remain bound by *Filice* unless the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900. There are two Supreme Court decisions to consider. Addressing each in turn, we conclude that neither is irreconcilable with *Filice*.

First *Richards*. There, the Court explained that the FTCA "requires application of the whole law of the State where the act or omission occurred." 369 U.S. at 11. Following Congress's clear intent, the Court found it appropriate to disregard "the conflict-of-laws rule applied in suits where federal jurisdiction rests upon diversity of citizenship." *Id.* at 7 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The Court held instead that the FTCA requires district courts to apply the choice-of-law rule of the State where the act or omission occurred. *Id.* at 11–13. That, the Court reasoned, would "enable[] the federal courts to treat the United States as a 'private individual under like circumstances.'" *Id.* at 11 (quoting 28 U.S.C.§ 2674). The Court further explained that doing so would "provide[] a degree of flexibility to the law to be applied in federal

courts," consistent "with the character of the legislation and with the purpose of the Act considered as a whole." *Id.* at 12–13.

The Court's reasoning in *Richards* aligns with our reasoning in *Filice*. Understanding the FTCA's directive to apply the State's whole law as incorporating the State's law of claim preclusion likewise furthers the statutory goal of "treat[ing] the United States as a 'private individual under like circumstances.'" *See id.* at 11 (quoting 28 U.S.C. § 2674) (citing 28 U.S.C. § 1346(b)). As in *Richards*, "where the forum State is the same as the one in which the act or omission occurred, our interpretation will enable the federal courts to treat the United States as an individual would be treated under like circumstances." *See id.* at 12 & n.25. Incorporating the State's claim preclusion law also "provides a degree of flexibility to the law to be applied in federal courts." *See id.* at 12–13. Following *Richards*, "we should not, particularly in the type of interstitial legislation involved here, assume that" Congress has enacted "for litigation of this type a federal [claim preclusion] rule independent of the States' development of such rules." *See id.* at 13. *Richards* is therefore consistent with *Filice*.

The second decision is *Semtek International Inc. v. Lockheed Martin Corp.*, where the Court addressed the claim preclusive effect of federal diversity judgments. 531 U.S. 497, 499 (2001). There, a federal district court sitting in diversity in California dismissed Semtek's claims against Lockheed Martin "as barred by California's [two]–year statute of limitations." *Id.* Afterward, Semtek sued Lockheed Martin again in Maryland state court, "alleging the same causes of action, which were not time barred under Maryland's [three]-year statute of limitations." *Id.* Applying federal claim preclusion law, which treats statute

of limitations dismissals as preclusive, the Maryland state court dismissed the claims as barred by the California federal court judgment.  *Id.* at 500.

The Supreme Court granted certiorari to decide whether the claim preclusive effect of a federal diversity judgment "is determined by the law of the State in which the federal court sits."  *Id.* at 499–500.  Because no "federal textual provision" addressed the claim preclusive effect of a federal diversity judgment, the Court determined that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity."  *Id.* at 506–08.  In "determin[ing] the appropriate federal rule," the Court "adopt[ed], as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits," subject to an exception for "situations in which the state law is incompatible with federal interests."  *Id.* at 508–09.  The Court accordingly reversed the Maryland state court's decision, explaining that "the claim-preclusive effect of the California federal court's dismissal . . . is governed by a federal rule that in turn incorporates" California claim preclusion law—which was "the law that would be applied by state courts in" California, "the State in which the federal diversity court" sat.  *Id.*

*Semtek* did not undercut *Filice*.  If anything, *Semtek* supports *Filice* because the Court suggested there that a "federal textual provision" could prescribe the preclusive effect of federal court judgments.  *See id.* at 507.[3]  And as

---

[3] It is unclear whether Congress or the Supreme Court is the *ultimate* source for the preclusive effect of federal court judgments.  *See* Ronan E. Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 744–45, 747–49, 748 n.31, 768–69 (1976) (suggesting that the "clearly established rule

discussed, the FTCA's command to apply "the whole law of the State where the act or omission occurred," *Richards*, 369 U.S. at 11, can be understood as including a directive to apply that State's claim preclusion law.[4]  *Filice*, in turn, can be understood as having followed that congressional directive.  *See* 271 F.2d at 783–84.

---

that state courts must give full faith and credit to the proceedings of federal courts" derives from Article III and the Supremacy Clause); David L. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 145 (2001) (explaining that the federal common law of preclusion "is binding on the states through the Supremacy Clause"); William Baude, *The Judgment Power*, 96 Geo. L.J. 1807, 1847 (2008) (noting that "a great deal more research and analysis would be necessary to untangle the interaction between" the different sources of res judicata); Kevin Song, Note, *Preclusive Jurisdictional Dismissals*, 119 Nw. U. L.R. 1703, 1707 n.7 (2025) (noting that "the source of federal-state res judicata is unclear").  But "the reasoning or theory" of *Semtek*, *see Miller*, 335 F.3d at 893, cannot have been that the claim preclusive effect of federal judgments is determined by federal common law to the exclusion of federal statutory law.  If that were the theory of *Semtek*, the Court would have had to re-examine *Dupasseur v. Rochereau*, which had held that the res judicata effect of federal diversity judgments "is such as would belong to judgments of the State courts rendered under similar circumstances."  *See* 21 Wall. 130, 135 (1874).  But in *Semtek*, the Court merely distinguished *Dupasseur* as decided under a statute no longer in effect.  *See* 531 U.S. at 501 ("While we agree that this would be the result demanded by *Dupasseur*, the case is not dispositive because it was decided under the Conformity Act of 1872 . . . ."); *id.* at 506 (explaining that "the claim-preclusive effect" of the "California federal diversity judgment" is *not* "dictated" by *Dupasseur*).

[4] The Fifth Circuit has held to the contrary.  *See Johnson v. United States*, 576 F.2d 606, 612 (5th Cir. 1978) ("[U]nder the [FTCA] a federal court should apply federal principles of res judicata and collateral estoppel in considering the preclusive effect of a prior federal judgment").  But *Johnson* is not an "intervening higher authority" which could have "effectively overruled" *Filice*.  *See Miller*, 335 F.3d at 893.

The United States argues that we should nonetheless apply federal claim preclusion law because, "[i]n an action under the FTCA, a court must apply the law the state courts would apply in the analogous tort action, including federal law." This argument builds on the correct observation that, when presented with a valid federal judgment, California courts generally apply "federal claim preclusion law . . . without reference to California law." *See Guerrero v. Dep't of Corr. & Rehab.*, 239 Cal. Rptr. 3d 726, 733 (Ct. App. 2018); *see also Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994) ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law."). But in this Circuit, the claim preclusive effect of a FTCA judgment is determined by *Filice*—under which federal law *incorporates* the claim preclusion rule of the State where the act or omission occurred. *See Filice*, 271 F.2d at 783–84.

In sum, as a three-judge panel, we remain bound by *Filice. See Miller*, 335 F.3d at 893. Under *Filice*, we apply the claim preclusion law of the State where the act or omission occurred—here, California. *See* 271 F.2d at 783–84.

## IV

Applying California law, we determine that the *Hedrington II* judgment did not have claim preclusive effect. And even if it did, we alternatively conclude that California's public policy exception to claim preclusion would apply.

## A

The *Hedrington II* judgment did not trigger California's doctrine of claim preclusion. California courts have held

that "a prior judgment based on the statute of limitations ordinarily is not on the merits." *Boyd v. Freeman*, 227 Cal. Rptr. 3d 164, 171 (Ct. App. 2017). This is because California courts deem "[t]ermination of an action by a statute of limitations" a "technical or procedural, rather than a substantive, termination." *Koch*, 273 Cal. Rptr. at 441. So under California law, a prior judgment of dismissal based on the statute of limitations lacks claim preclusive effect. *Boyd*, 227 Cal. Rptr. 3d at 171. Because *Hedrington II* was dismissed as time-barred, the district court erred by giving claim preclusive effect to a judgment that, under the applicable law, did not have such effect.

## B

In any event, the district court's decision to apply claim preclusion based on the *Hedrington II* judgment—despite its knowledge of and jurisdiction over *Hedrington I*—resulted in manifest injustice sufficient to trigger the public policy exception under California law. This is because Hedrington, "the party to be affected," did *not* have "an opportunity to litigate the same matter in [*Hedrington II*]." *See Panos*, 134 P.2d at 243.

"California courts routinely turn to the Restatement Second of Judgments for guidance." *5th & LA v. W. Waterproofing Co.*, 303 Cal. Rptr. 3d 855, 861 (Ct. App. 2023). The Restatement acknowledges that "[w]ithin the constitutional limits [of due process], the contours of res judicata are determined by the particulars of the opportunity to litigate afforded by the system of procedure in question." Restatement (Second) of Judgments ch. 1 pg. 7 (A.L.I. 1982). "A just system of justice," the Restatement continues, "requires alertness to the possibility of failure of justice in an individual case, corresponding to alertness to

the possibility of injustice in the law itself." *Id.* at 12. "The law of res judicata," the Restatement urges, "therefore must provide some leeway for reexamination of judgments." *Id.* Doing so promotes not only "fairness" but also "efficiency." *Id.*

California has implemented the Restatement (Second) of Judgments principles by recognizing a flexible but seldom applied public policy exception to claim preclusion. Under California law, "a final judgment may be denied claim preclusive effect when [giving the judgment such effect] would result in manifest injustice." *F.E.V. v. City of Anaheim*, 223 Cal. Rptr. 3d 213, 216–17 (Ct. App. 2017) (denying claim preclusive effect to a prior judgment that was "based entirely" on a panel decision since overturned by this Court on rehearing en banc); *City of Sacramento v. California*, 785 P.2d 522, 528–29, 529 n.8 (Cal. 1990) (denying claim preclusive effect to the prior judgment because of "overriding public-interest issues"). This exception applies "[i]n rare circumstances" when "the policies underlying claim preclusion . . . would be defeated rather than advanced by according preclusive effect to the judgment"—especially if doing so would "only erode public confidence in judicial decisions." *F.E.V.*, 223 Cal. Rptr. 3d at 216–17.

The principal policy underlying California's doctrine of claim preclusion is finality. *See id.* at 217, 225. Because "the party to be affected" has actually litigated or "had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction," that same party (or someone in privity with that party) "should not be permitted to litigate it again to the harassment and vexation of [the party's] opponent." *Panos*, 134 P.2d at 243. This finality principle, however, presupposes *fairness*; it assumes that the

party to be affected "*had an opportunity* to litigate the same matter in [the] former action." *See id.* (emphasis added). So when giving preclusive effect to the prior judgment would result in manifest injustice and harm to "the integrity of the judicial system," California courts apply the public policy exception and decline to give the prior judgment preclusive effect. *See F.E.V.*, 223 Cal. Rptr. 3d at 225–26.

Here, Hedrington "seek[s] adjudication of claims that have *never* been properly resolved on the merits." *See id.* at 225 (emphasis added). And as to the merits, Hedrington has *not* "litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *See Panos*, 134 P.2d at 243. Thus, to further "the policies underlying [California's] claim preclusion" doctrine, we conclude that the *Hedrington II* judgment should not apply on these facts to foreclose Hedrington's ability to litigate the merits of his case. *See F.E.V.*, 223 Cal. Rptr. 3d at 216–17, 225–26.

In sum, under California law, the *Hedrington II* judgment did not have claim preclusive effect and, in any case, the public policy exception to claim preclusion applies. Claim preclusion thus does not bar Hedrington's timely FTCA claim.

**V**

For these reasons, we reverse the district court's grant of summary judgment in *Hedrington I*, which dismissed Hedrington's claim against the United States based on claim preclusion. We remand for further proceedings consistent with this opinion and with the accompanying memorandum disposition.

**REVERSED AND REMANDED.**