Filed 8/29/22  Garcia v. Sanchez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LUPE GARCIA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CECILIA LUNA DE SANCHEZ, Individually and as Successor Trustee, etc.,<br><br>    Defendant and Respondent. | B308519<br><br>Los Angeles County<br>Super. Ct. No.  BC626207 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Andrew B. Cervik for Plaintiff and Appellant.

MacCarley & Rosen and Lisa MacCarley for Defendant and Respondent.

Plaintiff Lupe Garcia appeals a judgment of dismissal following an order sustaining the demurrer, without leave to amend, of defendant Cecilia Luna de Sanchez, in her individual capacity and as successor trustee of the Jose H. Sanchez Living Trust. Lupe sued Cecilia to recover an alleged interest in certain real properties held in the trust.[1] The trial court concluded a judgment against Lupe in an earlier probate action where she asserted an interest in the same real properties precluded her claims in this action under the res judicata doctrine. Our review of the record confirms the elements of res judicata are satisfied. We affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. *Background*

Lupe is the daughter of Jose H. Sanchez and Catalina Iracheta de Sanchez. During their marriage, Jose and Catalina acquired real property on Great Oak Circle and Roseview Avenue in Los Angeles County, which they held as joint tenants. In 1984, Jose and Catalina executed a will (the 1984 Will) that granted each spouse a life estate in the real property and provided that, upon the surviving spouse's death, Lupe would inherit Great Oak Circle. The remaining real and personal property would be divided equally among Lupe and her three half-siblings (Catalina's children from a previous marriage).

After Catalina died in 1987, Jose married Cecilia. They had one son, Jose H. Sanchez, Jr. On May 15, 1990, Jose recorded an "Affidavit—Death of Joint Tenant" that conveyed the title of Great Oak Circle to himself and Lupe as joint tenants. On February 1, 1996, Jose recorded a deed

---

[1] Because some individuals in this case have the same or similar last names, we use first names for clarity.

2

conveying his interest in Great Oak Circle to himself as trustee of the Jose H. Sanchez Revocable Trust of January 26, 1996. In 1999, Jose revoked his 1996 trust and conveyed his interest in Great Oak Circle into the Jose H. Sanchez Living Trust (the Trust). He later amended the Trust to give the entire trust estate, including his interest in Great Oak Circle and the Roseview property, to Cecilia. Under the Trust, if Cecilia predeceased Jose, Jose Jr. would receive the entire trust estate upon Jose's death.

**2.      *The Earlier Probate Action***

Jose died on July 6, 2012. Within one year, on July 5, 2013, Lupe filed a civil complaint for quasi-specific performance of the1984 Will and to impose a constructive trust against Jose's estate, the Trust, and others. Lupe's civil complaint alleged that when Jose conveyed his interest in Great Oak Circle and Roseview to the Trust, he breached his contract with Catalina as set forth in the 1984 Will. On the same day, Lupe petitioned for probate of Jose's estate under the 1984 Will and for letters of administration. Cecilia filed a will contest, alleging the 1984 Will had been revoked by a will that Jose executed on July 9, 2010 (the 2010 Will).

On November 4, 2013, Judge William Fahey ordered Lupe's civil case stayed pending resolution of her petition to probate the 1984 Will. Lupe then filed a notice of related cases, listing the petition to probate the 1984 Will and the civil case as related cases. The court declined to relate the cases because the civil case had been stayed. On November 7, 2014, Judge Fahey held an order to show cause hearing on why the civil case should not be dismissed. After argument, the court dismissed the civil case without prejudice.

3

On November 10, 2014, Lupe filed a petition under Probate Code section 850, subdivisions (a)(2) and (a)(3) (the first 850 petition), seeking an order establishing her claim of ownership to the property, directing transfer of the property to her, and for quasi-specific performance of a contract to make a will and to impose a constructive trust based on the 1984 Will.

Judge Maria Stratton held a court trial on Cecilia's will contest and Lupe's petition to probate the 1984 Will. In a comprehensive ruling, Judge Stratton concluded (1) the 1984 Will was a joint and mutual will that Jose revoked when he executed the 2010 Will; and (2) the 1984 Will also constituted a contract between Jose and Catalina to make reciprocal dispositive provisions, including the real property dispositions to Lupe and her siblings as specified in the 1984 Will. The probate court clarified that "[t]he issue of what properties are properly included in Jose's estate is not addressed by this decision as the only matter currently before the court is Cecilia's will contest." But the court also noted that, in light of the 1984 Will's contractual nature, "Jose's revocation of this 1984 [W]ill may not conclusively resolve how the property shall ultimately be distributed."

Judge Stratton granted Cecilia's will contest and denied Lupe's petition to probate the 1984 Will. The probate court also ordered Lupe to show cause why the first 850 petition should not be dismissed, as Lupe had not been appointed the personal representative of Jose's estate.

On November 12, 2015, Judge Stratton held a hearing on the order to show cause. The probate court observed that Lupe had amended the first 850 petition by filing "a supplemental petition" that "completely change[d] [her] legal theory." Because the purported supplemental petition requested "completely

4

different relief," the court dismissed the first 850 petition and instructed Lupe that she needed to refile her petition as a separate trust action.

On November 13, 2015, Lupe filed a petition under Probate Code section 850, subdivision (a)(3)(A) in the trust department (the second 850 petition). In her second 850 petition, Lupe alleged the 1984 Will evidenced an agreement between Jose and Catalina that the survivor would not alter the property distributions made in that will. She alleged Jose breached the agreement when he made a contrary distribution in the Trust. The petition requested that Cecilia, as successor trustee of the Trust, transfer her interest in Great Oak Circle and one-fourth of the proceeds from the sale of Roseview (which Cecilia allegedly sold in April 2016), to Lupe.

Cecilia filed a demurrer to the second 850 petition, arguing Lupe's claims were time-barred under the one-year statute of limitations in Code of Civil Procedure section 366.2 (section 366.2). Because Lupe filed the second 850 petition more than three years after Jose's death, and the statute of limitations in section 366.2 could not be tolled, Cecilia argued the demurrer should be sustained without leave to amend.

Lupe opposed the demurrer. She argued her rights arose only after Jose died, and she maintained Judge Stratton had tolled the statute of limitations when she told Lupe to refile her petition in the trust department.

Judge Clifford Klein sustained the demurrer to the second 850 petition without leave to amend. The probate court concluded the second 850 petition was untimely under the one-year statute of limitations in section 366.2 and Lupe had not pleaded facts demonstrating Cecilia should be estopped from

5

asserting the statute of limitations. On June 2, 2017, the probate court entered judgment in favor of Cecilia.

Lupe appealed the judgment of dismissal, arguing the second 850 petition alleged sufficient facts to equitably estop Cecilia from asserting the statute of limitations as a defense.

On October 16, 2019, we filed an opinion affirming the judgment. We concluded Lupe could "point to no statements or actions by Cecilia during the one-year period after [Jose's] death that prevented [Lupe] from filing a timely 850 petition," and we rejected the contention that statements made by Judge Stratton when she dismissed the first 850 petition somehow warranted an equitable estoppel against Cecilia. (*Garcia v. De Sanchez* (Oct. 16, 2019, B282029) [nonpub. opn.] (*Garcia I*).)

### 3.    *The Current Action*

On July 6, 2016, Lupe filed the current action against Cecilia in her individual capacity and as successor trustee of the Trust. The operative first amended complaint asserts three causes of action for breach of contract, promissory estoppel, and breach of implied covenant, all premised on the allegation that Lupe was "an intended and specifically identified third party beneficiary under a valid written contract contained within a joint and mutual will"—i.e., the 1984 Will. Under the contract contained in the 1984 Will, Lupe alleges she became the 100 percent interest owner of Great Oak Circle and 25 percent interest owner of Roseview upon her father's death, by operation of law.

Cecilia filed a demurrer, arguing the judgment in the former probate action precluded Lupe's claims under the res judicata doctrine. In opposition, Lupe argued res judicata is "not a grounds for demurrer" under the governing statutes.

6

The trial court sustained Cecilia's demurrer without leave to amend and entered a judgment of dismissal. Lupe filed a timely notice of appeal.

**DISCUSSION**

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . Under the doctrine of res judicata, . . . a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897 (*Mycogen*).) " 'The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.' " (*Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1681 (*Burdette*).)

"Res judicata bars the relitigation not only of claims that were conclusively determined in the first action, but also matter that was within the scope of the action, related to the subject matter, and relevant to the issues so that it could have been raised." (*Burdette, supra,* 158 Cal.App.4th at pp. 1674–1675, citing *Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 (*Sutphin*); *Merry v. Coast Community College Dist.* (1979) 97 Cal.App.3d 214, 222.) "A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin,* at p. 202.)

Claim preclusion arises if a second suit involves (1) the same cause of action or matter within that action (2) between

7

the same parties (3) after a final judgment on the merits in the first suit.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; *Sutphin, supra,* 15 Cal.2d at p. 202.)  "If claim preclusion is established, it operates to bar relitigation of the claim altogether."  (*DKN Holdings*, at p. 824.)

Cecilia asserts, and the trial court concluded, the judgment in Lupe's former probate action precludes her current action under the res judicata doctrine.  We agree.

Under our res judicata doctrine, a second suit involves the same cause of action as a former action if both suits seek to vindicate the same "primary right."  (*Mycogen, supra,* 28 Cal.4th at p. 904.)  The primary right theory " 'provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty.' "  (*Ibid*.)  " 'The most salient characteristic of a primary right is that it is indivisible:  the violation of a single primary right gives rise to but a single cause of action.' "  (*Ibid*.)  " '[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered.  [Citation.]  It must therefore be distinguished from the *legal theory* on which liability for that injury is premised:  "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief."  [Citation.]  The primary right must also be distinguished from the *remedy* sought:  "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' "  (*Ibid*.)

Our review of the operative complaint confirms Lupe's current action seeks to vindicate the primary right to enforce her interest as a third party beneficiary under the mutual contract between Jose and Catalina embodied in the 1984 Will. To that end, the complaint alleges Lupe "is an intended and specifically identified third party beneficiary under a valid written contract contained within a joint and mutual will" between Jose and Catalina, under which Jose was obligated to ensure she received the interests in the relevant real properties identified in the will. This is the same primary right Lupe asserted in the second 850 petition, in which she alleged the 1984 Will "constitute[d] a written agreement and contract" between Jose and Catalina "whereby the survivor was obligated to abide by the provisions for the distribution of the [relevant real properties] as specified in the will," including the identified distribution to Lupe "as a beneficiary under the agreement contained in the 1984 Will." While Lupe maintains her claims are different because "[t]he 850 Petition was a probate remedy not a civil remedy," that distinction makes no difference under the primary right theory that governs our res judicata doctrine. (See *Mycogen, supra,* 28 Cal.4th at pp. 905, 909 [second suit alleging "a breach of the same contract, differing only in the requested remedy[,]" was "based on the violation of the same primary right" and thus barred under res judicata doctrine].)

The judgment on the second 850 petition also plainly satisfies the second element—Lupe's former probate action involved herself and Cecilia in Cecilia's individual and trustee capacities (the same parties to this action).

Because Lupe's former probate action was dismissed on statute of limitations grounds, the last element—a final judgment

*on the merits*—is less straightforward in this case. Res judicata may be raised as a defense "on demurrer when all relevant facts 'are within the complaint or subject to judicial notice.' [Citations.] Furthermore, that defense may be invoked even when the prior judgment resulted from the sustaining of a demurrer, provided that the judgment was '*on the merits*.' [Citation.] Whether the prior judgment was on the merits depends upon the facts of the case and the reason for the ruling." (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 855 (*Boyd*), italics added.)

"The words 'on the merits' have an accepted legal meaning. They refer to the substantive elements of a claim or defense, as distinguished from technical or procedural impediments to proceeding with a claim." (*Smart Corner Owners Assn. v. CJUF Smart Corner LLC* (2021) 64 Cal.App.5th 439, 461, citing Black's Law Dict. (11th ed. 2019) p. 1185, col. 2 [defining "merits" as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp[ecially] of procedure"].) Consistent with this accepted meaning, under the res judicata doctrine, a "judgment based upon the sustaining of a demurrer for technical or formal defects is not on the merits and thus is not a bar to the filing of the new action. [Citation.] 'On the other hand, it is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former.' " (*Boyd, supra,* 18 Cal.App.5th

10

at p. 855; *Koch v. Rodlin Enters.* (1990) 223 Cal.App.3d 1591, 1596 (*Koch*).)

For res judicata purposes, our appellate courts have recognized "a prior judgment based on the statute of limitations ordinarily is not on the merits." (*Boyd, supra,* 18 Cal.App.5th at p. 856; *Koch, supra,* 223 Cal.App.3d at p. 1596.) Those decisions have relied on our Supreme Court's holding in *Lackner v. LaCroix* (1979) 25 Cal.3d 747 (*Lackner*), where the high court explained in the malicious prosecution context that the "[t]ermination of an action by a statute of limitations defense must be deemed a technical or procedural as distinguished from a substantive termination. . . . [¶] ' "Statutes of limitations . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." [Citation.]' [Citation.] Thus the purpose served by dismissal on limitations grounds is in no way dependent on nor reflective of the merits—or lack thereof—in the underlying action." (*Id.* at pp. 751–752 [holding, "[a] bar raised by the statute of limitations does not reflect on the merits of the action and thus is not a favorable termination for purposes of a subsequent malicious prosecution action"].)

But in the res judicata context, our Supreme Court has explained that an absolute defense, even if technical in nature, may be deemed to be on the merits, if the plaintiff cannot correct the defects by a different pleading in proper form: "A judgment

11

given after the sustaining of a general demurrer on *a ground of substance, for example, that an absolute defense is disclosed by the allegations of the complaint, may be deemed a judgment on the merits, and conclusive in a subsequent suit*; and the same is true where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action. [Citations.] But even a judgment on general demurrer may not be on the merits, for the defects set up may be technical or formal, and *the plaintiff may in such case by a different pleading eliminate them or correct the omissions and allege facts constituting a good cause of action*, in proper form. Where such a *new and sufficient complaint* is filed, the prior judgment on demurrer will not be a bar." (*Goddard v. Security Title Ins. & Guarantee Co.* (1939) 14 Cal.2d 47, 52 (*Goddard*), italics added; accord, *Keidatz v. Albany* (1952) 39 Cal.2d 826, 828 (*Keidatz*) ["[E]ven though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar."].)

The reviewing court in *Boyd* reversed a judgment of dismissal, concluding the trial court erred in sustaining a demurrer on res judicata grounds where the former judgment was based in part on the plaintiff's failure to bring a timely claim under the statute of limitations. (*Boyd, supra,* 18 Cal.App.5th at pp. 857, 861–862.) In the earlier action, the plaintiff sued her former attorney for breach of fiduciary duty, alleging the attorney made a " 'usurious' loan" secured by a property in Glendale that the plaintiff later lost to the attorney in foreclosure. (*Id.* at p. 851.) The trial court sustained the attorney's demurrer, concluding the claims were untimely under applicable statutes

12

of limitations and otherwise legally untenable. (*Ibid*.) The plaintiff then commenced a new action, asserting claims for wrongful foreclosure and quiet title, based on allegations that the attorney " 'caused an illegal, fraudulent or willfully oppressive sale' of the Glendale property." (*Id*. at pp. 852–853.) The trial court sustained the attorney's demurrer, concluding the former judgment barred the plaintiff's claims under the res judicata doctrine. (*Id*. at p. 853.) The *Boyd* court reversed.

While the *Boyd* court recognized "both actions involved one primary right in common—namely, the right associated with the nonjudicial foreclosure scheme," it concluded "the judgment in the first action was not on the merits with respect to that primary right, and thus did not bar [the plaintiff's] second action." (*Boyd, supra,* 18 Cal.App.5th at p. 857.) In so holding, the court rejected the argument that the plaintiff's second action constituted "an impermissible 'effort to circumvent . . . the rulings . . . in the [f]irst [l]awsuit denying her leave to amend.' " (*Id*. at p. 858.) The *Boyd* court explained: "[The plaintiff's] second action did not contravene the rule against splitting a cause of action, as the judgment in her first action was not 'on the merits' with respect to the key primary right underlying her claims in the second action. In the absence of a judgment on the merits, the bar rule of claim preclusion did not disallow [the plaintiff's] new claims for unlawful foreclosure *predicated on additional factual allegations*. [Citation.] Nor did the denial of leave to amend in the first action do so. As our Supreme Court has explained, '[i]f . . . *new or additional facts are alleged that cure the defects in the original pleading*, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.' "

13

(*Id*. at pp. 858–859, italics added, citing *Keidatz, supra,* 39 Cal.2d at p. 828.)

Similarly, in *Koch*, the reviewing court reversed a judgment of dismissal, concluding a summary judgment on statute of limitations grounds in a former action was not a judgment on the merits for res judicata purposes where the plaintiff's new pleading effectively cured the limitations defect. (*Koch, supra,* 223 Cal.App.3d at pp. 1593, 1597.) In the former action, the plaintiffs had alleged the defendants unlawfully created and sold a subdivision in violation of California law. (*Ibid*.) The defendants moved for summary judgment, asserting the action was untimely under the applicable statute of limitations. (*Id*. at p. 1594.) The plaintiffs conceded the California law did not apply, as the property was in Arizona, and they requested leave to amend to plead a claim for fraud, explaining they had recently discovered grounds for the claim after they filed their complaint. The trial court granted the summary judgment and denied leave to amend, suggesting the plaintiffs could file a second action asserting their fraud claim. (*Ibid*.) But when the plaintiffs filed the second suit, a new trial judge sustained the defendants' demurrer without leave to amend, concluding the earlier summary judgment was res judicata for all claims concerning the property. (*Id*. at p. 1595.) The *Koch* court reversed.

Relying on our high court's legal malpractice holding in *Lackner*, the *Koch* court recognized the termination of an action on statute of limitations grounds normally should be "deemed a technical or procedural, rather than a substantive, termination." (*Koch, supra,* 223 Cal.App.3d at p. 1596, citing *Lackner, supra,* 25 Cal.3d at p. 751.) The court reasoned that statutes of limitations serve the same purpose in all contexts—namely,

14

"to set controversies at rest by foreclosing consideration on the merits of the claim." (*Koch,* at p. 1596.) But the *Koch* court also recognized, under *Goddard*, that a " 'judgment given after the sustaining of a general demurrer on a ground of substance, for example, that an absolute defense is disclosed by the allegations of the complaint, may be deemed a judgment on the merits, and conclusive in a subsequent suit.' " (*Koch,* at p. 1597, quoting *Goddard, supra,* 14 Cal.2d at p. 52.) It ultimately held that rule did not apply, however, because the plaintiffs' former action "was barred by the statute of limitations for contract rescission actions, a procedural but not absolute defense," whereas the plaintiffs' new action was "based on common law fraud *which allegedly was discovered within the applicable limitations period*." (*Koch,* at p. 1597, italics added.) Because the plaintiffs " 'by a different pleading' " were able to " 'eliminate [the statute of limitations defect] . . . and allege facts constituting a good cause of action, in proper form,' " the *Koch* court held "the former judgment does not bar the present case." (*Ibid*., quoting *Goddard,* at p. 52.)

Cecilia argues *Boyd* and *Koch* are inapposite because the plaintiffs in those cases "had the ability to salvage their complaint by [asserting a] new and different theory of recovery." By contrast, she says Lupe "could not and did not allege new and different facts which could circumvent the one-year statute of limitations [under section 366.2] pertaining to claims against a [d]ecedent." Thus, under the rule in *Goddard*, Cecilia maintains section 366.2 should not be treated as "merely procedural" for res judicata purposes. (Underline omitted.) Rather, she argues, it constitutes "an absolute defense to any and all claims that

15

[Lupe] has made, could make, and will ever make against her deceased Father . . . and his estate." We agree.

Our review of Lupe's second 850 petition and her operative complaint in this case confirms Lupe has not alleged new or different facts to eliminate the statute of limitations defect that compelled a judgment of dismissal in the former probate action. In her second 850 petition, Lupe asserted the "doctrine of equitable estoppel" should estop Cecilia "from raising any affirmative defense based on the expiration of the applicable statute of limitations based on the following: . . . Respondent Trust and [Cecilia] knew the facts concerning [Lupe's] claim and/or cause of action, and made representations by words and conduct, in that [Lupe's] claims and/or causes of action would be resolved in the [first 850 petition], knowing and intending that [Lupe] would rely and act upon such representations and/or conduct," which Lupe relied upon in having the action heard in the first 850 petition proceeding. Without substantive change or additional facts, Lupe makes the same allegation in her operative complaint, notwithstanding our holding in *Garcia I* that Lupe had "not shown facts supporting a conclusion that Cecilia should be equitably estopped from asserting the statute of limitations." (*Garcia I*.)

Similarly, in her second 850 petition, Lupe asserted the "statute of limitations applicable to [her] cause of action should be tolled pursuant to the doctrine of equitable tolling in that at the time [Lupe] filed her initial action, [Lupe] was possessed of several legal remedies"; she "reasonably and in good faith pursued a remedy designed to provide for the relief sought"; and "[Cecilia] received timely notice of [Lupe's] claim within the applicable statute of limitations period and there is no lack

16

of prejudice [*sic*] to defendant."  Again, without substantive change or additional facts, Lupe makes the same allegation in her operative complaint, notwithstanding our holding in *Garcia I* that the one-year limitations period set forth in section 366.2 " 'shall not be tolled or extended for any reason except as provided' in subparts (1)–(4) [of the statute] (none of which is relevant to the facts of this case)."  (*Garcia I*, quoting § 366.2, subd. (b).)

Finally, in her second 850 petition, Lupe asserted she in fact brought her claims within the applicable limitations period by filing the original civil action within a year of Jose's death.  She alleged the trial court in that action, "not wishing to continue the stay" put in place while the probate court adjudicated the first 850 petition, decided "to dismiss the civil case without prejudice while [Lupe] pursued her claim under the 1984 [W]ill in the Probate Department."  In sustaining Cecilia's demurrer to the second 850 petition, the probate court acknowledged the timely filing of the original civil action, but observed that, apart from alleging the action had been dismissed without prejudice, the second 850 petition made "no mention of any facts surrounding the alleged agreement [to have the claims pursued in the first 850 petition] or what was argued at the hearing before the dismissal" to support an equitable estoppel against Cecilia.  In *Garcia I*, we likewise concluded Lupe had alleged "no statements or actions by Cecilia during the one-year period after [Jose's] death that prevented [Lupe] from filing a timely 850 petition."  (*Garcia I*.)  Notwithstanding our holding and the trial court's observation, Lupe's complaint does not mention the original civil action, let alone offer additional

17

allegations about the reasons for its dismissal that would support application of the equitable estoppel doctrine in this case.

Because the parties' appellate briefs did not discuss whether the judgment in the former probate action was on the merits, we requested supplemental briefing to address the authorities holding a judgment of dismissal on statute of limitations grounds ordinarily is not deemed on the merits when the plaintiff can cure the defect by a different pleading. (See *Boyd, supra,* 18 Cal.App.5th at pp. 858–859; *Koch, supra,* 223 Cal.App.3d at p. 1597.) In her supplemental brief, Lupe has neither pointed to new allegations in her operative complaint, nor identified new facts that she would allege if granted leave to amend, to cure the statute of limitations defect that compelled dismissal of her former probate action. Instead, she makes two arguments that we expressly rejected in *Garcia I.*

First, Lupe contends her claim for breach of contract did not accrue until after her father's death—when his life estate ended—rendering section 366.2 inapplicable and her action timely under the four-year statute of limitations for a claim based on a written contract. We rejected that argument in *Garcia I,* explaining:

> "Section 366.2 applies to a cause of action (as here) alleging a contract to make a will. [Citation.] Although 'as a general rule, such a cause of action does not come into existence until after the promisor has died . . . . [¶] . . . an exception exists where the promisor has made an inter vivos transfer of property specifically covered by the contract. [Citations.] In that situation, the promisee may seek equitable

18

relief against the promisor during the promisor's lifetime.' [Citation.] In 2010, [Jose] made an inter vivos transfer of Great Oak Circle and the other property to the living trust, and amended the living trust to leave all the property to Cecilia. [Lupe] had an equitable cause of action while [Jose] was alive, and [Jose] died before expiration of the four-year statute of limitations for filing an action for breach of contract. [Citation.] [Jose] was 'a person against whom an action may be brought on a liability of the person . . . arising in contract,' and so [Lupe] had one year after [Jose's] death to file her action [under section 366.2]." (*Garcia I*, citing *Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 846–847.)

Second, Lupe contends the judgment in this case is contrary to *Dacey v. Taraday* (2011) 196 Cal.App.4th 962, because she did not have "any knowledge of the 1984 [W]ill contract until after [Jose's] death." Again, we rejected that argument in *Garcia I*, explaining:

"[Lupe] also argues that *Dacey v. Taraday* (2011) 196 Cal.App.4th 962, establishes that section 366.2 does not apply. In that case it was undisputed that the decedent never breached the contract while alive, and instead the administrator, acting on behalf of the estate, breached the agreement. As the breach of contract claim was not against the decedent, the one-year statute of limitations did not

19

apply.  (*Dacey,* at pp. 966, 973, 980.)  Here, [Jose], the decedent, breached the contract to make a will while alive, by making a different disposition in his living trust."

(*Garcia I*; see also *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 554 [Section 366.2's use of the phrase " 'whether accrued or not accrued' [applies to] . . . situations where the cause of action *existed* while the decedent was alive, but had not yet *accrued* for limitations purposes—as where the decedent had perpetrated a fraud of which the plaintiff was unaware.  In such a case, the decedent's death triggers the limitations period prescribed by the statute, regardless of any accrual rule otherwise governing the claim.  The result is to require would-be claimants to seek out and assert any claims they might have against the decedent within a year of his death, or suffer the loss of those claims."].)

It is apparent from Lupe's complaint and her supplemental brief that, unlike the plaintiffs in *Boyd* and *Koch*, she is unable " 'by a different pleading' " to " 'eliminate [the statute of limitations defect] . . . and allege facts constituting a good cause of action, in proper form.' " (*Koch, supra,* 223 Cal.App.3d at p. 1597, quoting *Goddard, supra,* 14 Cal.2d at p. 52; see also *Boyd, supra,* 18 Cal.App.5th at pp. 858–859.)  In that way, she is more like the plaintiff in *Kahn v. Kahn* (1977) 68 Cal.App.3d 372.  In that case, the reviewing court held a dismissal for failure to comply with discovery orders is a judgment on the merits for res judicata purposes.  Although the dismissal seemingly stemmed from a procedural violation, the *Khan* court explained the underlying rationale for authorizing such a dismissal was firmly rooted in "the theory that a persistent refusal to comply with an order for the

20

production of evidence is tantamount to an admission that the disobedient party really has no meritorious claim or defense to the action." (*Kahn,* at p. 382.)

Like the *Kahn* court, we are compelled to conclude Lupe's persistent inability to allege facts supporting a timely legal claim under section 366.2 is tantamount to an admission that she has no meritorious claim to assert. As we explained in *Garcia I*, "[i]n enacting section 366.2, '[t]he Legislature has determined that the one-year statute of limitations will best effectuate the strong public policy of expeditious and final estate administration,' despite the potential for unfairness under unusual circumstances." (*Garcia I*.) As it is apparent that Lupe will be unable, no matter how many subsequent actions she may bring, to overcome the absolute bar imposed by the statute of limitations, we must respect that legislative determination and hold the dismissal of her former probate action was a judgment on the merits precluding this and any future action seeking to vindicate her alleged rights under the 1984 Will. The trial court did not err in concluding the res judicata doctrine bars this action.

## DISPOSITION

The judgment is affirmed. Defendant Cecilia Luna de Sanchez, in her individual capacity and as successor trustee of the Jose H. Sanchez Living Trust, is entitled to costs.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.

22